IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD HANSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. |
| v. | ) |
| | ) |
| JOHN AND MARTINA MCBRIDE, | ) |
| JAM PRODUCTIONS, INC., | ) |
| d/b/a BLACKBIRD STUDIOS | ) |
| | ) JURY DEMAND |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Richard Hanson ("Plaintiff" or "Mr. Hanson"), by and through counsel, and makes the following Complaint against Defendants John McBride, Martina McBride, and Jam Productions d/b/a Blackbird Studios (collectively "Defendants").

### PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Fair Labor Standards Act of 1938 ("FLSA"), 29. U.S.C. § 201 *et seq*., and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304.

2. Plaintiff Richard Hanson is a citizen and resident of Davidson County, Tennessee.

3. Defendant Jam Productions, Inc., d/b/a Blackbird Studios ("Blackbird Studios") is a recording studio located at 2806 Azalea Pl, Nashville, TN 37204. Blackbird Studios may be served through its registered agent at 11 Music Cir. S., Nashville, TN 37203.

1

4. Defendant John McBride ("Mr. McBride) owns and operates Jam Productions, Inc., d/b/a Blackbird Studios. John McBride is a citizen and resident within the jurisdiction of this Court.

5. Defendant Martina McBride is a co-owner of Jam Productions, Inc., d/b/a Blackbird Studios. Martina McBride is a citizen and resident within the jurisdiction of this Court.

6. This Court has subject matter jurisdiction pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's claims arising under the statutory laws of Tennessee pursuant to 29 U.S.C. § 1367.

7. This Court has personal jurisdiction over Jam Productions d/b/a Blackbird Studios, which does business in the State of Tennessee, and Defendants John and Martina McBride, who reside in the State of Tennessee.

8. Venue lies in this Middle District of Tennessee pursuant to 28 U.S.C. § 1391 because Defendants do business and/or reside in this judicial district and a substantial part of the alleged events or omissions giving rise to this action occurred within this district.

## FACTUAL BASIS FOR SUIT

9. Plaintiff formerly worked for Defendants. Plaintiff worked for Defendants as an Operations Manager.

10. Plaintiff was employed by Defendants from on or about June 12, 2012 until on or about June 6, 2017, at which time he was terminated in violation of the FLSA and Tennessee Public Protection Act.

11. Plaintiff handled a variety of day-to-day operations at Blackbird Studios. Plaintiff's duties included the administration of Defendants' internship program.

12. Defendants' internship program (the "unpaid internship program") is year-round and entirely unpaid for the intern participants (the "interns"). Most interns are between 16 and 22 years old and pursuing their education at a local high school, college, or other educational institution.

13. Defendants' made it a practice to hire unpaid interns to work at Blackbird Studios for the purposes of assigning them tasks that it would otherwise have to pay employees to perform.

14. Defendants' made it a practice to assign unpaid interns job tasks that provided little or no educational or training benefits to the intern. Also, Defendants' routinely failed to accommodate unpaid interns' academic commitments by corresponding to its work demands to their academic calendars.

15. Specific incidents where Defendants' required the unpaid interns to perform employment-related tasks that were not primarily for the purpose of the interns training and education during Plaintiff's employment are pervasively numerous. This Complaint provides a non-exhaustive number of examples of Defendants' unlawful behavior regarding its unpaid internship program.

16. Defendants' regularly required its unpaid interns to clean bathrooms and other areas of Blackbird Studios. Requiring unpaid interns to clean bathrooms and other areas cut Defendants' labor costs for cleaning and custodial services.

17. Defendants' regularly required unpaid interns to set up and tear down equipment on jobs in a manner that was not for training or educational purposes. Utilizing unpaid interns to set up and tear down equipment lowered Defendants' costs for retaining crews and contractors for said tasks.

3

18. John McBride, Martina McBride, other members of the McBride family, and employees of Jam Productions routinely required interns to run their personal errands. The personal errands were performed at times the interns could have been performing recording industry-related work. The interns received no educational or training value from running the personal errands of John and Martina McBride and others.

19. John McBride once demanded that two unpaid interns go to his home in the middle of the night to check if there was an intruder on the premises. One of the intern's, who did not know or receive training on how to safely operate a firearm, was handed a loaded gun to perform this security-related task.

20. Martina McBride and her children regularly required unpaid interns to do her/their grocery shopping. Interns were asked to go grocery shopping at times the could have been performing recording industry-related work at Blackbird Studios for their benefit.

21. Martina McBride, John McBride, and others regularly required unpaid interns to pick up and deliver food and other personal items to members of the McBride family. These tasks were assigned at times the interns could have been performing recording industry-related tasks at Blackbird Studios.

22. John McBride, Martina McBride, and other agents of Defendants would often [aggressively and in the presence of others] yell at, scold, and chastise unpaid interns who failed to perform the non-recording industry-related tasks to Defendants' satisfaction.

23. Unpaid interns often expressed to Plaintiff that they were dissatisfied with the work tasks; absence of meaningful education and training; and the general hostility towards them shown by Defendants' and its agents. Unpaid interns have abruptly quit the unpaid internship program under the claim, "This is not what I signed up for."

4

24. Based on reasonable observation and belief, Plaintiff concluded that Defendants' business practices regarding its unpaid interns violated the Fair Labor Standards Act. Plaintiff, based on understanding of Department of Labor regulations and averments, contended that the unpaid interns were compensable employees entitled to minimum wages and overtime pay.

25. It appeared that the primary beneficiaries of Defendants internship program were Defendants rather than the unpaid interns. Defendants made clear to Plaintiff that its unpaid internship program was a means to get free labor that it would otherwise have to pay employees to perform.

26. Plaintiff repeatedly informed Defendants' and its agents about his position that the unpaid interns should have been paid wages in accordance with the Fair Labor Standards Act and positions taken by the Department of Labor in this issue.

27. Additionally, Plaintiff repeatedly informed Defendants and its agents that its failure to pay assistant recording engineers ("recording engineers") overtime pay was also in violation of the wage and hour provisions of the Fair Labor Standards Act.

28. Defendants and its agents refused to correct the conditions complained about by Plaintiff with regard to the unpaid internship program and overtime payment to its recording engineers.

29. On or about June 6, 2017, Plaintiff made a report to the Department of Labor regarding Defendants illegal business practices related to unpaid internship program and recording engineers.

30. On June 6, 2017, Plaintiff informed General Manager Rolff Zweip about his report to the Department of Labor. Mr. Zweip informed John McBride about Plaintiff's complaints to him and the Department of Labor.

31. In response, John McBride fired Mr. Hanson about an hour later.

32. Mr. McBride called Plaintiff and directly stated, "I hear you have a f—king problem and you're gonna call the Better Business Bureau or some f—king sh-t." Plaintiff responded by stating, "No, I emailed the Department of Labor," to which Mr. McBride told Plaintiff, "Well, I'm done with you. Get your sh-t and get the f-ck out of my studio."

33. Defendants' termination of Plaintiff's employment was unlawful retaliation against Plaintiff in violation of the Fair Labor Standards Act for his complaints about Defendants' FLSA violations.

34. Defendants termination of Plaintiff also violated the Tennessee Public Protection Act because that termination was based on Plaintiff's refusal to remain silent about, and refusal to participate in, Defendants' illegal activities (or activities reasonably concluded to be illegal) in violation of the FLSA.

35. As a result of Defendants' unlawful actions, Plaintiff has lost income, continued employment, enjoyment of life, and other privileges and benefits of employment. He has also suffered embarrassment, humiliation, harm to his reputation, stress, anxiety, and incurred attorneys' fees and expenses.

## CAUSES OF ACTION

### Retaliation in Violation of the Fair Labor Standards Act

36. The foregoing facts are incorporated by reference as if stated fully herein.

37. This violation of the FLSA is against Defendants Jam Productions, Inc., and John and Martina McBride.

38. Plaintiff complained on multiple occasions of his good faith belief of Defendants' violations of the FLSA to Defendants ownership, management, and the Department of Labor.

39. In response to Plaintiff's June 6, 2017 report to management and the Department of Labor, Defendants' fired Plaintiff and made comments that directly indicate that its motive for terminating Plaintiff was retaliatory in nature.

40. Defendants' termination of Plaintiff's employment was unlawful retaliation against Plaintiff in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

**Retaliation in Violation of the Tennessee Public Protection Act**

41. The foregoing facts are incorporated by reference as if stated fully herein.

42. The TPPA violations are pursued against Defendant Jam Productions, Inc. as Plaintiff's employer.

43. Plaintiff was a covered employee and Defendant Jam Productions, Inc. d/b/a Blackbird Studios is a covered employer under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 *et seq*.

44. Plaintiff refused to remain silent and/or participate in Defendants' violations of the Fair Labor Standards Act.

45. Defendant Jam Productions d/b/a Blackbird Studios, Inc., through its agents, terminated Plaintiff's employment solely because of his refusal to remain silent and participate in Defendant's violations of the FLSA, in violation of Plaintiff's rights under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 *et seq*.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks the Court:

1. That a trial by jury be held on all triable issues;

2. Judgment in favor of Plaintiff against Defendants, jointly and severally, on all Counts in this action;

3. Declaratory judgment that the practices complained of are unlawful and void, and injunctive relief prohibiting the defendants from violating the law in the manner described above;

4. Back pay, benefits, and other appropriate economic damages;

5. Front pay;

6. Liquidated damages;

7. Compensatory damages for emotional distress, humiliation, and pain and suffering of $1,000,000.00 for Defendants' FLSA violations, and/or appropriate compensatory damages to the maximum provided under the TPPA;

8. Attorneys' fees, expenses, and related costs to Plaintiff;

9. Prejudgment interest and, if applicable, post-judgment interest; and

10. Such other and further legal and equitable relief to which Plaintiff may be entitled.

Respectfully Submitted,

s/ Brian C. Winfrey

---

Brian Winfrey, TN Bar No. 02576
Employment Practice Leader, TN
MORGAN & MORGAN
810 Broadway, Suite 105
Nashville, Tennessee 37203
(615) 601-1276
bwinfrey@forthepeople.com