# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RICHARD HANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00524 |
| ) | Judge Aleta A. Trauger |
| JOHN MCBRIDE and JAM ) | |
| PRODUCTIONS d/b/a BLACKBIRD ) | |
| STUDIOS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Richard Hanson has filed a Motion for Liquidated Damages (Doc. No. 88), to which John McBride and Jam Productions d/b/a Blackbird Studios ("Blackbird") have filed a Response (Doc. No. 97). Hanson has also filed a Motion for Attorney's Fees (Doc. No. 91), to which McBride and Blackbird have filed a separate Response (Doc. No. 98). For the reasons set out herein, Hanson's Motion for Liquidated Damages will be granted in part and denied in part, and his Motion for Attorney's Fees will be granted, as modified by this opinion.

## I. BACKGROUND

"The Fair Labor Standards Act of 1938 ['FLSA'] sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011). "[S]ubstantive rights under . . . the FLSA are non-waivable." *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 831 (6th Cir. 2019). In other words, even if an employee (or unpaid intern doing the work of an employee) purports to agree to particular terms, those terms may still violate the FLSA. Hanson believed that his then-employer, Blackbird, was violating the FLSA with its interns and others, and he complained

about it, first to Blackbird operator and co-owner John McBride, and eventually to the Department of Labor. McBride, with whom Hanson had long been feuding about issues both related and unrelated to the alleged FLSA violations, fired him.

The FLSA, like many other statutes regulating the relationships between employees and employers, includes a retaliation provision intended to protect employees who complain about colorable violations of the statute. *See* 29 U.S.C. § 215(a)(3). On June 5, 2018, Hanson sued Blackbird, McBride, and another, now-dismissed defendant for retaliation under that provision, as well as under the Tennessee Public Protection Act ("TPPA"). (Doc. No. 1 ¶¶ 36–44; *see* Doc. No. 18 (dismissing other defendant).) The court held a jury trial on Hanson's claims on February 4 through 7, 2020. At the conclusion of the trial, the jury returned a verdict concluding that, (1) for purposes of the FLSA, Hanson proved by a preponderance of the evidence that he was terminated because he engaged in protected opposition related to actual or reasonably believed violations of the FLSA, (2) for purposes of the TPPA, Hanson had failed to prove by a preponderance of the evidence that his termination was exclusively and only because he refused to remain silent, or spoke out, about alleged illegal activities, (3) Hanson was entitled to $59,242 in backpay, (4) Hanson was entitled to $100,000 in compensatory damages, (4) Hanson was entitled to no front pay, and (5) Hanson had not established by a preponderance of the evidence that he was entitled to punitive damages. (Doc. No. 83 at 1–2.) In the days following the verdict, Hanson's attorneys did not file any motion seeking additional damages.

On February 14, 2020, the court entered a Judgment in Hanson's favor in conformity with the jury's verdict.. (Doc. No. 85.) On March 11, 2020, counsel for Hanson, citing a "demanding trial schedule and serious personal illness," filed a Motion seeking an extension of time to file "(1) Attorney Fee Petition Documents and; (2) [a] Petition for Liquidated Damages."

2

(Doc. No. 86 at 1.) Rule 7.01(a)(1) of this court's Local Rules requires that, "[i]n cases in which all parties are represented by counsel, all motions, except motions under Rule 12, 56, 59, or 60, but including discovery motions, must state that counsel for the moving party has conferred with all other counsel, and whether or not the relief requested in the motion is opposed." Hanson's motion did not comply with this Rule, making no mention of whether the extension was opposed. The court, which was already partially aware of counsel's serious health problems because they had manifested during the week of the trial in this case, granted the motion on the day it was filed. (Doc. No. 87.)

On April 13, 2020, Hanson filed a Motion for Liquidated Damages [or] Prejudgment Interest. (Doc. No. 88.) He seeks $159,242 in liquidated damages in addition to the damages awarded by the jury or, in the alternative, a lesser award of liquidated damages or an award of prejudgment interest. (*Id.* at 2.) The next day, April 14, 2020, he filed a Motion for Attorney's Fees. (Doc. No. 91.) Hanson requests an award of $194,987.50 in attorney's fees, reflecting a rate of $475 per hour for 410.5 hours of work by his attorney, Brian Winfrey.[1] (Doc. No. 92 at 4–10.)

On April 22, 2020, the defendants filed a motion seeking a 30-day extension of time to respond to Hanson's two pending motions. (Doc. No. 94.) The defendants cited delays and constraints necessitated by the COVID-19 pandemic. (*Id.* at 1.) The defendants did not indicate

---

[1] The motion's treatment of potential costs is somewhat confusing. The motion itself mentions "litigation expenses," but it makes no mention of the amount of those expenses. (Doc. No. 91 at 1.) The briefing for that motion mentions about $5,000 in expenses and claims that "a separate filing will include receipts and invoices supporting the litigation expenses requested." (Doc. No. 92 at 2.) Based on the numbers presented, Hanson's counsel appears to be referring to Hanson's Bill of Costs (Doc. No. 93), which should have been addressed, if anything, only at taxable costs, not additional costs recoverable only as part of the FLSA award of fees and costs. *See* L.R. 54.01(a), (b)(1). On May 4, 2020, the Clerk rejected that Bill of Costs and informed Hanson that he "may appeal the Clerk's decision to the Court." (Doc. No. 96 at 2.) Hanson did not appeal that decision. The court, accordingly, will address only the request for fees.

3

whether their motion was opposed or unopposed. (*Id.*) The next day, the court granted the defendants' motion. (Doc. No. 95.)

On May 28, 2020, the defendants filed Responses to Hanson's two motions. (Doc. Nos. 97–98.) With regard to the request for attorney's fees, the defendants did not dispute that Hanson was entitled to an award but objected to the reasonableness of the figure sought. (Doc. No. 97.) In their other Response, however, the defendants argued that Hanson was time-barred from seeking the award of liquidated damages, despite the court's having granted his request for an extension of time to file the motion. Specifically, the defendants argue that, because the motion was filed after a judgment was entered, it is properly construed as a motion to alter or amend the judgment under Rule 59(e) and that the time period for filing such a motion cannot be extended by the court. Hanson did not file a reply addressing either Response.

## II. LAW AND ANALYSIS

### A. Liquidated Damages

#### 1. Standard of Law

An employer who has violated the anti-retaliation provision of the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of" the prohibition on retaliation, "including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The standard for requiring the payment of liquidated damages in the event of a violation of" the anti-retaliation provision "is fundamentally different from that governing a violation of" the Act's wage and hours provisions. *Blanton v. City of Murfreesboro*, 856 F.2d 731, 737 (6th Cir. 1988). In wage and hours cases, liquidated damages "are considered 'the norm' and have even been referred to by [the Sixth Circuit] as 'mandatory,'" unless an exception

4

applies. *Solis v. Min Fang Yang*, 345 F. App'x 35, 38 (6th Cir. 2009) (quoting *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 585 (6th Cir. 2004)). In contrast, liquidated damages are only available for retaliation insofar as "an award of liquidated damages would 'effectuate the purposes' of the retaliation provisions of the FLSA." *Taylor v. City of Gatlinburg*, No. 3:06-CV-273, 2009 WL 10710267, at *2 (E.D. Tenn. Feb. 9, 2009) (quoting *Blanton*, 856 F.2d at 737).

           2. Whether the court can consider Hanson's motion

The defendants argue that the court cannot consider Hanson's motion for liquidated damages because it is an untimely Rule 59(e) motion to alter or amend the judgment. A motion to alter or amend a judgment pursuant to Rule 59(e) must be "filed no later than 28 days after the entry of the judgment." For most types of motion or response, the court can extend a party's time for filing pursuant to Rule 6(b). Rule 6(b)(2), however, provides a list of express exceptions to a court's power to extend the time for filing a motion, and that list includes motions under Rule 59(e). Although Hanson did not style his motion as arising under Rule 59(e), the defendants argue that it must, as a matter of law, be construed as such.

The defendants base their argument in large part on *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989), in which "the Supreme Court held that a postjudgment motion for discretionary prejudgment interest was governed by Rule 59(e)." *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 387 (6th Cir. 1998) (discussing *Osterneck*). In *Osterneck*, the plaintiffs had prevailed at trial and, immediately following the verdict's announcement, moved orally for discretionary prejudgment interest. However, the district court, "not wishing to hear argument on petitioners' motion at that point, directed petitioners to submit their motion for prejudgment interest in writing within 10 days." *Osterneck*, 489 U.S. at 171. The court directed that the judgment be entered immediately but informed counsel that the judgment could be amended to reflect the interest, if awarded. *Id.*

5

The plaintiffs filed the motion as directed. While the motion was pending, parties filed cross-notices of appeal. The court's unusual procedural approach, however, had put those attempted appeals on a collision course with the then-current version of Rule 4(a)(4) of the Federal Rules of Appellate Procedure, which, at the time, directed that "a notice of appeal filed before the disposition of [a motion to alter or amend the judgment] 'shall have no effect.'" *Osterneck*, 489 U.S. at 170 (quoting Fed. R. App. P. 4(a)(4) (1989)).

Before any appeal could be decided, the district court granted the motion for prejudgment interest and entered onto the docket a document captioned as an "Amended Judgment." After the Amended Judgment was filed, the plaintiffs filed a new notice of appeal. However, the new notice omitted a party that had been included in the earlier notice of appeal. The circuit court, therefore, dismissed the appeal with respect to the omitted party, on the ground that no effective notice of appeal had been filed against that party, given that the initial notice had no effect. *Id.* In so doing, the circuit court "rejected petitioners' contention . . . that their motion for prejudgment interest was not a motion to alter or amend the judgment under Rule 59(e) because it merely addressed an issue collateral to the main cause of action." *Osterneck*, 489 U.S. at 173 (citation omitted). The Supreme Court granted certiorari to consider the matter.

The Supreme Court contrasted the case with the situation presented by *White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982), in which the Court had held that a motion for attorney's fees was not a motion to alter or amend judgment. From *White*, the Court took the general proposition that "a postjudgment motion will be considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.'" *Osterneck*, 489 U.S. at 174 (quoting *White*, 455 U.S. at 451). The Court concluded that prejudgment interest, in contrast to attorney's fees, "is an element of [a

6

plaintiff's] complete compensation," *id.* at 175 (quoting *West Virginia v. United States*, 479 U.S. 305, 310 & n.2 (1987)), and therefore cannot be treated as "wholly collateral to the judgment in the main cause of action," *id.* (quoting *White*, 485 U.S. at 268).

At least one district court has considered the applicability of *Osterneck* to liquidated damages awards under the FLSA. The District of South Dakota, relying in large part on Eighth Circuit precedent regarding liquidated damages under the Age Discrimination in Employment Act, appears to have concluded that FLSA liquidated damages motions are motions to alter or amend a judgment under *Osterneck*. *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 WL 960010, at *4 (D.S.D. Mar. 12, 2010) (discussing *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488 (8th Cir. 1992)). Even without that circuit-level precedent, however, the test set forth in *Osterneck* appears to dictate that a motion for liquidated damages under the FLSA be treated as a motion to alter or amend the judgment. Liquidated damages are part of a plaintiff's total compensation under the FLSA, and they are closely tied to the merits of the case. They are not collateral in the way that fees and costs are. Blackbird is therefore correct that Hanson's motion regarding liquidated damages, unlike its motion for attorney's fees, is correctly characterized as a motion to alter or amend the judgment itself.

Because Hanson has not filed a Reply, he has not advanced any argument that there is an alternative basis, under the Rules of Civil Procedure, for considering his request. The defendants' own briefing, however, acknowledges some arguments he might make. Specifically, the defendants concede that the motion would be timely if considered under Rule 60(a)—which permits corrections for clerical mistakes, oversights, and omissions—or Rule 60(b)—which allows for relief from a judgment for certain specific reasons, including fraud or inadvertence. The defendants also acknowledge, but argue the court should reject, the possibility that one could

7

argue that their timeliness objection has been waived.

With regard to Rule 60(a), the defendants argue that the court's non-inclusion of liquidated damages in the judgment was not a clerical error or the type of omission that Rule 60(a) is intended to address. The Sixth Circuit has recognized that the purpose of Rule 60(a) is "to authorize the court to correct errors that are mechanical in nature," and it therefore does not authorize the court "to revisit its legal analysis or otherwise correct an 'error[] of substantive judgment.'" *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 364 (6th Cir. 1990)). For example, if the court had orally granted Hanson liquidated damages, but the damages had erroneously been left off of the judgment, Rule 60(a) would likely provide a remedy. Hanson, however, has not provided any evidence that he was awarded liquidated damages by this court.

The language of Rule 60(a) creates some difficulty for a case such as this, because one could argue, based on the ordinary meaning of the language, that the court's lack of a ruling on liquidated damages was a "mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). On the other hand, many errors of law and fact could be characterized as mistakes arising from oversight or omission. Reading the phrase too broadly, therefore, would allow a court to bypass the demanding procedural requirements of Rule 59(e) in a way likely not intended by the Rules. The court is therefore reluctant to read Rule 60(a) to encompass "omissions" that cannot be fairly characterized as clerical.

Rule 60(b) allows a party to seek relief from a final judgment and request the reopening of his case under a limited set of circumstances, such as fraud, mistake and newly discovered evidence. Rule 60(b)(6), which permits the broadest scope of potential reasons for reopening the case, permits the court to grant relief from the judgment when a party shows "any other reason

that justifies relief." A petitioner seeking relief under Rule 60(b)(6) is required to show extraordinary circumstances justifying the reopening of a final judgment. *Ackermann v. United States*, 340 U.S. 193, 199 (1950). There may be colorable arguments that the court could apply Rule 60(b) here, but the court, as with Rule 60(a), is wary of transforming a narrow safety valve included in the Rules into *carte blanche* to revisit earlier errors after a judgment is entered.

Ultimately, however, the court need not decide whether Rule 60(a) or Rule 60(b) could be relied upon here, because the defendants have forfeited their timeliness objection. The defendants concede that the time limitation of Rule 59(e) is non-jurisdictional and can be waived by a party that fails to raise an objection in a timely manner. *See Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007) ("Because the district court ruled on the State's Rule 59(e) motion before NEF raised the issue of untimeliness, NEF has forfeited its timeliness defense."). The defendants argue that they did not waive or forfeit any objection here, though, because the court ruled summarily on Hanson's extension request, before the defendants could raise the issue, which they now raise in opposition to the motion for liquidated damages.

This court's Local Rule 7.01, however, expressly contemplates this precise situation, in which the court makes a summary ruling before a non-movant can file a response, and ensures that every non-movant will have the chance to raise his objections in a process functionally equivalent to ordinary briefing, no matter how quickly the court rules:

> The Court may act on the motion prior to the time allowed for response. In such event, the affected party may file a motion to reconsider the Court's ruling within fourteen (14) days after service of the order reflecting the action of the Judge. However, notwithstanding any other provisions of this rule, the prevailing party shall not respond to a motion to reconsider under this section unless the Court orders a response.

L.R. 7.01(b). That Rule exists specifically to avoid a situation such as this one. The court, in ruling on what superficially appeared to be a routine motion, made an error that could complicate

9

proceedings and affect the substantive rights of the parties. The court's Local Rules, however, made certain that the court's premature ruling did not and could not affect the defendants' right to timely raise any issue that they could have raised in an ordinary response. They simply had to do so within fourteen days—just as, if they had filed a response, it would have needed to be timely itself. The effect of the Local Rule is to ensure that, regardless of the speed with which the court acts, the parties will have the opportunity to enjoy the same ordinary thrust-and-parry of a motion, a response, and, if leave is granted, a reply—merely under the different formal headings of a motion, a motion to reconsider, and a response.

Typically, of course—in contexts other than Local Rule 7.01(b)—a failure to file a motion to reconsider will not result in a waiver or forfeiture of any argument. But that is because non-Rule 7.01(b) motions to reconsider, generally speaking, do not exist to raise new arguments. *See United States v. Huntington Nat. Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009) ("[A]bsent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited.") (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Rather, the appropriate time to raise an argument in opposition to a motion is typically in the non-movant's response. The very purpose of a motion to reconsider under L.R. 7.01(b), however, is to serve as the equivalent of such a response when none could have been filed. The court sees no reason why the same principles of waiver and forfeiture should not govern here.

The defendants argue that they have not forfeited their timeliness defense because the court has not ruled on the untimely motion itself. But, while the court admittedly has not ruled on the merits of that motion, the court has, in fact, ruled on its timeliness—it ruled that the motion would be timely if filed during the extension period, which it was. The Local Rules afforded the

defendants the opportunity to challenge that ruling, but the defendants were required to do so within fourteen days. Having missed their deadline to challenge the extension, the defendants now untimely seek to enforce the Rule 59(e) deadline against Hanson. Because allowing them to do so would be inconsistent with the local rules, the court will consider the plaintiffs' motion on the merits.[2]

3. Whether liquidated damages are appropriate

As the court has explained, liquidated damages are available in conjunction with FLSA retaliation claims, insofar as they are necessary to further the purposes of the Act's anti-retaliation provision. The purpose of the anti-retaliation provision, generally speaking, is "to foster an environment in which employees are unfettered in their decision to voice grievances without fear of economic retaliation." *Jackson v. Maple Dips, LLC*, No. 3:16-CV-296, 2017 WL 991701, at *1 (S.D. Ohio Mar. 14, 2017) (quoting *Saffels v. Rice*, 40 F.3d 1546, 1549 (8th Cir. 1994)); *see also Moore v. Freeman*, 355 F.3d 558, 563 (6th Cir. 2004) (stating that one of the purposes of the anti-retaliation provision is "to ensure that employees feel free to report grievances under the FLSA"). Hanson argues that awarding liquidated damages in this case would further that purpose by imposing additional costs on Blackbird as a consequence of its termination of Hanson based on his complaint.

The defendants respond that liquidated damages are not necessary in this case, particularly in light of the sizable compensatory damages award already granted by the jury. The court agrees. The evidence supported the jury's conclusion that Hanson was fired for bringing

---

[2] The court also notes that it could, in the alternative, construe Hanson's motion for an extension, which was filed within 28 days of the entry of judgment, as itself a timely motion for liquidated damages. Hanson did not merely ask for a general extension of time for any and all hypothetical post-trial motions; he specifically informed the court that he was going to seek liquidated damages. The court, accordingly, could construe that motion as a timely Rule 59(e) motion. The court's grant of the extension, therefore, would, in effect, be merely an extension of the time for filing supplemental briefing, which Rule 6 does not forbid.

Blackbird's actions to the attention of the Department of Labor; however, the evidence also showed that Hanson and McBride had developed an acrimonious, dysfunctional employer/employee relationship that likely would have ended for some reason, sooner rather than later, regardless. The jury's award of backpay and compensatory damages was proportionate to the harm done. The expensive and—for McBride and Blackbird—likely embarrassing litigation leading up to the verdict, moreover, belies any argument that further damages are necessary to deter FLSA retaliation violations generally. If McBride, who works in the entertainment industry and is the spouse of a popular entertainer, had simply fired Hanson because the two did not get along, the inquiry could have ended there. Instead, because he fired Hanson for an improper reason, numerous sensitive and embarrassing facts about McBride's behavior and the culture at Blackbird were brought to light in a public forum, culminating in a verdict against them. McBride and Blackbird, moreover, will, they concede, be required to fund Hanson's lawsuit against them, a no doubt unpleasant fact to McBride, given the disdain McBride has demonstrated toward Hanson in the past. The court has little doubt that any employer that witnessed these proceedings would be deterred from doing what McBride has done. The court therefore will not award Hanson liquidated damages.

    4. Whether to award prejudgment interest

The defendants do not dispute that prejudgment interest is among the damages that a court can award to a plaintiff who prevails on his FLSA retaliation claim, if the interest would further the purposes of the anti-retaliation provision. Hanson argues, in contrast, that prejudgment interest is *mandatory* in an FLSA case in which liquidated damages are not awarded. However, the Sixth Circuit case on which he relies for that proposition involved claims for withheld wages, not a retaliation claim. *See McClanahan v. Mathews*, 440 F.2d 320, 326 (6th

Cir. 1971). As the court has already discussed, damages for retaliation claims and damages for wage and hours claims are governed by different principles under the FLSA, with the language related to retaliation claims entrusting the court with greater discretion to grant or withhold particular types of supplemental damages based on the purposes of the Act. It is therefore within the discretion of the court whether to award prejudgment interest.

The purpose of an award of prejudgment interest is "simply [to] compensate a [plaintiff] for the lost interest value of money wrongly withheld from him or her." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998)). In cases involving wages, an award of prejudgment interest also reflects an acknowledgment that an employee who has lost his source of income may resort to "borrowing money to sustain [himself], and paying interest," while his "employer . . . is benefitting from [its wage] violations, since [it] has the use of [the] employee's money." *McClanahan*, 440 F.2d at 326.

Awards for wages, however, also present challenges for appropriately calculating interest. For example, the jury in this case awarded Hanson $59,242 in backpay. Hanson's wages if he had remained at Blackbird, however, would have been paid over time, not all at once. The interest value of each paycheck would only be the amount yielded by calculating interest from the date of that paycheck, not the date of termination. An accurate calculation of interest in such a situation would either (1) need to be detailed and based on the employee's specific pay calendar or (2) need to rely on a reasonable shortcut, such as calculating interest from the midpoint of the relevant period. *See, e.g.*, *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) ("When unpaid wages were incurred at various times, simple prejudgment interest is calculated from a singular, midpoint date through the date judgment is entered.")

13

(quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10 CIV. 8195 LLS JLC, 2012 WL 1669341, at *10 (S.D.N.Y. May 14, 2012)).

The court concludes that Hanson is entitled to prejudgment interest, on his backpay only, calculated from the midpoint between his June 6, 2017 termination and the February 14, 2020 entry of the judgment: October 11, 2018.[3] The court has no way of knowing the precise details of what Hanson's compensatory damages represent, and the jury determined, based on the court's instructions, that $100,000 was sufficient to fully compensate him. Only the backpay, therefore, requires interest to reflect adequate compensation. The court further finds that an interest rate of 5% simple interest is appropriate. By the court's calculation, that amounts to an additional award of $3,984.63

**B. Reasonableness of Attorney's Fees**

1. Standard

"The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.§ 216(b). In determining a reasonable fee, the court must strive to compensate the party awarded fees adequately but not excessively. *See Reed v. Rhodes*, 179 F.3d 453, 471–72 (6th Cir. 1999) ("[C]ourts must remember that they do not have a mandate . . . to make prevailing counsel rich.") (*quoting Johnson v. Ga. Highway Express*, Inc., 488 F.2d 714, 719 (5th Cir. 1974)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This two-step calculation, known as the

---

[3] October 11, 2018 is 493 days after June 6, 2017 and 492 days before February 14, 2020. By calculating interest from the midpoint of the period, the court accounts for the fact that the interest value of the backpay is not uniform from paycheck to paycheck.

14

"lodestar" amount, provides an "initial estimate of the value of a lawyer's services." *Id.* However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434. After determining the lodestar amount, the court may adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). However, "trial courts need not, and should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Id.* Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### 2. The defendants' objections

The defendants argue that a $475 per hour rate is unreasonably high for what was, fundamentally, a very straightforward retaliation case. They also argue that, for similar reasons, 410.5 represents an unreasonable number of hours. Finally, the defendants argue that the court should depart downward from any ultimate lodestar amount because Hanson's monetary recovery was significantly less than he sought.

With regard to the hourly rate, the court, based on its experience in this district and its familiarity with prevailing practices, as well as its having considered and ruled on numerous other attorney's fees motions, agrees that $475 is within the realm of what is ordinary and reasonable for experienced litigation counsel in this district. Rarely will a case justify having every single task of representation performed by an attorney billing that rate, but that was apparently the case here, and counsel's presentation of the case evidenced his intimate knowledge of his case. The court accordingly will apply an hourly rate of $475 to calculate the lodestar amount.

The court also does not find the hours claimed to be unreasonable. Shepherding a case from its beginning to a jury verdict is an extraordinarily labor-intensive process, even for a case as relatively simple as this one. Moreover, the court is unpersuaded by the defendants' attempts to provide examples of hours that could be shaved off the total. For example, the defendants point to hours expended on tasks in which Hanson was not ultimately successful, such as his opposition to the dismissal of the third defendant originally named in his Complaint. Those hours, however, were just as much a part of counsel's representation in this case as the hours spent on tasks where he succeeded, such as the trial. *See Deja Vu v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

Finally, the court will not depart downward from the lodestar amount. The Sixth Circuit has said that the court may consider a variety of factors in determining the appropriateness of a departure from the lodestar amount, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745–46 (6th Cir. 2005) (citing *Johnson*, 488 F.2d at 717-19). In the majority of cases, however, the lodestar amount already reflects these factors within the court's calculation of a reasonable hourly rate and hours billed. *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 621 (6th Cir. 2007). The only basis that the defendants have identified for departing downward, other than the relative simplicity of the case, is that Hanson originally

and at trial sought damages in excess of what he was originally awarded. (*See, e.g.*, Doc. No. 1 at 8 (seeking $1,000,000 in compensatory damages).) The court, however, will not penalize the plaintiff for aiming high and seeking everything that might have been available; the court instead will judge his degree of success based on the facts and the value of his claims. *See Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006) ("Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative.") (citing *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1386 (D.C. Cir. 1995)). The court finds that the success was substantial and was proportionate to the work performed. The court, therefore, will award attorney's fees based on a revised lodestar amount of $475 per hour for 410.5 hours, or a total of $194,987.50.

## IV. CONCLUSION

For the foregoing reasons, Hanson's Motion for Liquidated Damages (Doc. No. 88) will be denied and his Motion for Attorney's Fees (Doc. No. 91) will be granted, as modified herein. The defendants will be ordered to pay Hanson attorney's fees in the amount of $194,987.50 and prejudgment interest in the amount of $3,984.63.

An appropriate order will enter.

                                                                                      _____
                                                                                      ALETA A. TRAUGER
                                                                                      United States District Judge